*499 OPINION of the court, by
Judge Wallace.—
This is a contest for land Under adversary titles- Brooks, who was complainant in the court below, commenced *500 the suit in the year 1794 ; but did not file his bill unti the year 1796, in which he represents that he is justlj entitled to the land under the following entry : “ September 25th 1780, Peter Cossart, assignee, &c. enters 600 acres upon a treasury warrant, on the head of the first branch of Muddy creek from the mouth as you go up on the right hand side of the creek, to include a dry spring and some saplings cut down. And that Clay unjustly claims his land under a survey and patent obtained on an entry made the 20th of june i’782, in the name of David Tanner. And in the same year in winch he states that knew nothing of the in-(1796) Clay filed his answer, he never was on the lands, an terlerence complained of; and seems by implication to demand that Brooks should exhibit Cossart’s entry, and grove the calls it contains. In 1798, both parties took orders of survey, and leave was given them to take depositions.
If a creek of considerable length, and fuch as may be prefumed to have attracted the notice or exploren) ne ver had but the name employed in the location, that name will he prejumed coe- : mal with the ■entry | and therefore a good description of the creeks
Entry *( on the head of the firit branch of Muddy creek ir-om the mouth as you go up, on the right band fi.de, to include a dry spring, and íoms ¡¿¡dings cut down.’' What were called guts and branches, by the iirft adventurers admitted In proof.
The sptmg was oblcure and imperfectly defcribed, only a few bushes aBout two inches thick, were cut and bent over the fpring. Having no notoriety, this description is not sufficient ro lead to, and Identify it j proof oi tnun. rheif, will ’.,»t do- — the ' . ry declared invalid and but oif~ milsed.
*500 In 1799, an order of reference to arbitrators was made, and afterwards in that year Brooks took four depositions, and Clav attended and cross-examined the witnesses ; the deposition of one of them, james Little, having before been taken bv Brooks in the year 1794, by order of court, when Clay attended and cross-examined him, without then or at any time afterwards objecting that it was prematurely or irregularly taken.
In 1807, the order of reference was set aside, and leave twice given to amend the survey and take depositions, on which two more depositions were taken by the complainant in that year. In March 1809, leave was again given to take depositions ; and the June following, the complainant was ruled into trial, the cause was heard, and the court took time to consider of their decree.
On a subsequent day of the same term, the defendant moved to have the cause opened and continued until the next term ; which was done, and further leave given to amend the survey and take depositions, on his deposing that since the argument he had discovered he could prove that James Little, one of the complainant’s material witnesses, was odious, infamous and destitute of moral character and principle, when his deposition was taken ; and that he (the defender!) had also discovered in the connected plat, sevcial mistakes and *501 omissions to bis prejudice. To this indulgence the complainant took exceptions, at the same rim 1 eserving to himself the privilege of taking den '■'’tie as to rebut those which might he taken bp Qk d s. a oat.
Alter a caufe had been long depending and a deposition taken early in the caufe j affidavit by . ..defendant that he had diicoveved-that cera plain-aht’s witnefs was injamous and dehiiuteof moral character, and that the report of survey was imperfect, &c. was no caufe for opening a caufe for depo-fitioas and a~ mending the furvey after argument.
All coils QC« cafioned by the opening of the caufe, that being excepted to by complainant, were improperly incurred, and therefore ordered / to⅞ be paid by the defendant j coils before that time, ordered to be paid by com* piainanc.
Decree as- to. principal matter affirmed and reverfed as-to. part of the cofts. Yet the £°⅛5 °d pákTby appei. lee, '
*501 It appears that on this leave thirty-five depositions were taken, about an equal number of them by each party; and that numerous a'iduums were .'nade to the surveyor’s report by live defendant. At the next term (September 1809) on the motion and at the costs of the defendant, the cause was continued until the subsequent term.
At that term (February 1810) the defendant obtained leave to file an amendment to his answer, which was immediately done ; m which he expressly putin issue the specialty of the complainant’s entry, and the identity and notoriety of the objects called for therein; at the same time offering to pay the costs of the amendment, and go to trial immediately, or give a continuance to the complainant if required ; to which the complainant excepted as improper at that stage of the suit. 'The court then went into trial, without making any order as to the payment of costs ; and after the original survey- or’s report was exhibited, and the bill, original answer and the depositions taken prior to the former hearing of the cause were read, the defendant offered in evidence the amended survey, and the depositions taken since the said former hearing ; to which the complainant objected, but was overruled by the court ; to which he again filed a bill of exceptions, again however reserving the right of reading the depositions taken by himself during the period aforesaid, if the defendant’s depositions were permitted to be read. The court having heard the cause, decreed that the complainant’s bill be dismissed with costs', and the cause has been brought into this court by appeal.
In deciding on the validity of the claim of the complainant, it is not conceived to be necessary, previously to decide on the propriety of the repeated indulgences given to the defendant by the court below, after it had ruled the complainant into trial, and the cause had been fully heard, inasmuch as the success of the complainant does not seem to have been thereby injured. The court will therefore proceed to investigate the entry on which he relics, taking into view ail the exhibits which *502 were produced on the second trial in that court. ' It however may not be amiss to premise, that several facts were agreed on by the parties, which do not appear to be very material. And in taking some of the depositions, the deponents were objected to by the com-pbbnant, and others were objected to by the defendant, as being interested ; concerning which, it need only be observed, that the interest disclosed as to any of them was not direct, and could only affect their credibility, and not their competency. A similar observation may be made as to the character of James Little, one of the complainant’s witnesses ; it could only lesson his credibility, even if it had not been counteracted by other testimony in his favor. The defendant also objected to several of the depositions taken by the complainant, because he had not received legal notice. But his attorney was present and cross-examined all of them, and it does not appear that the objection was made and decided on in court j so that it must be presumed it was there abandoned.
Muddy creek, called for in Cossart’s entry, is not expressly proven to have been generally known by that name when the entry was made ; but from the length of that watercourse, its contiguity to Boonsborough, anti from the manner in which several of the witnesses speak of it, who were acquainted with it when the entry was made, it ought to be admitted to have been well known to the generality of those who at that time were conversant in its vicinity, and it is not proven ever to have had any other name ; therefore it ought to be inferred that it had then obtained the name of Muddy creek. And k further satisfactorily appears, from the testimony of those who had the best and most early acquaintance with that creek at or near its month, that what is now called the Rocklick branch was then considered to be the first branch from the mouth of Muddy creek which emptied in on the right hand aide ; and that the drains which empty into the creek on that side below the Rocklick branch, which are now called branches by some other witnesses who have more latterly became acquainted with them, were at an early day only accounted guts or drains ; and from the descriptions given of them by almost every one of the numerous witnesses who have deposed concerning them, it seems. *503 that even now they cannot with propriety be styled branches.
Hat the only call in this entry which ⅛ its nature is strictly locative, is to include a dry spring and some saplings cut down. The court will presume that the. saplings intended were at or near the spring, and it will not make any remarks on the singularity of the expression, a dry spring ; l ut suppose it would be understood to mean, what in this country is more frequently named a wet-weather spring, that is to say, a spring which ceases to afford water in dry weather. The court is also satisfied from the testimony, that the place now shewn is really the place which was intended by the locator; but it ought to be observed that the spring which is shewn has no great resemblance to common springs of any kind ; yet if some saplings had been cut down at this place, perhaps it might have been discovered by subsequent locators, on their using reasonable diligence ; because it is shewn to be near the head of one of the two longest prongs of the Rocklick branch. But it is only proven that four or five grubs or bushes, the largest of them only about two inches through, were cut down or so hacked as to bend over this dry spring ; ,ao that in truth no saplings had been cut down at this "place before the entry was made ; therefore the description was too imperfect and erroneous to induce other locators, when the place was found, to believe it Was the place called for in Cossart’s entry ; at least the court cannot pronounce that it could have been known with certainty by the description contained in the entry, nor is it proven that the place was generally known as Cossart’s improvement. And therefore the decree of the court below, dismissing the complainant’s bill, is deemed correct by this court.
But another point remains to be considered. It is assigned as error, that at the June term, 1809, after the complainant had been ruled into trial, and the cause had been fully heard, and the court had taken time to consider what decree it would pronounce, on the motion of the defendant the cause was opened and leave given to take depositi®ns, and to amend the surveyor’s report ; and further, that at the February term 1810, leave was also given him to amend his answer, and notwithstanding these proceedings were duly excepted to by the *504 complainant, he was decreed to pay all the costs occasioned therebr. This court cannot doubt but that there ate various sufficient lessons for which a court of chancery may n-ys a suit after it has been heard ; it however dees not appear that the indulgences in question were author;-! d in any such reasons. The suit had been depending more than fifteen years, and special leave iv'd Keen n oiatedJy given to take depositions and. to amend me surveyor’s report, during which period the defendant had not taken any depositions, and he must have had ampie time and opportunity to do it, and to procure the surveyor’s report to be amended to his mind ; and any omission in taking depositions, or in amending the survey, could only be ascribed to negligence or carelessness. A similar observation will apply as to amending his answer ; ami as to his affidavit that he had not before discovered he could prove that James Little, one of the complainant’s material witnesses, was odious, infamous and destitute of moral character and principle when his depositions were taken, it is conceived it should not have been regarded, unless he had deposed that he never before discovered he could prove from record that Little’s charade? was thus exceptionable ; because what depended entirely on general reputation, could only go to the credibility of. his testimony ; and Little’s deposition having been first taken in the cause fifteen years, and again ten years before, at both of which times the defendant was present and cross-examined him ; and that he never made a prior discovery of what, if true, must have been known bv all Little’s acquaintances, ought also to be ascribed to negligence. Therefore this court is of opinion that all the indulgences which have been recited were improperly granted ; and that it was unjust and oppressive to decree th.t* the comp! linam snould pay any of the costs ocm-fnmei be wan. And it may not be amiss to subjoin, th it the a" n reus unnecessary additions which the del. '.tho’t winsL b to .e made to the surveyor’s report, and me .wen1 number ol depositions taken by him, and by the comp; unant to counteract them, jnany of which are unusu.t.ly lengthy, occasioned by the multiplicity of questions propounded by the defendant or his attorney, have rendered the costs enormous,
*505 Wherefore li is decreed and ordered, that the said decree of the circuit court for the county of Madison be reversed, so far as relates to the costs ; and that the suit be remanded to the said court, that they may amend the said decree, by so dividing the costs that the com- ; plainant shall recover from the defendant all his costs in consequence of the said continuance at their June term 1809, to the final decree at their February term 1810 ; and decree that the defendant shall only recover from the complainant all his preceding cost in that court. And it is further decreed and ordered that the appellant recover of the appellee his costs in this court expended.